IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA O'CONNOR </br></br> Plaintiff, </br></br> v. </br></br> NEW YORK STATE, DEPARTMENT OF FINANCIAL SERVICES </br></br> Defendant. | ) </br> ) </br> ) </br> ) CIVIL ACTION NO. 1:21-CV-0828 (BKS/ATB) </br> ) </br> ) </br> ) COMPLAINT </br> ) </br> ) JURY TRIAL DEMAND </br> ) |

## NATURE OF THE ACTION

On behalf of Plaintiff Barbara O'Connor, (referred to hereinafter as "Plaintiff" or "Barbara O'Connor") for her complaint against New York State, Department of Financial Services (referred to hereinafter as "Defendant" or "Employer" or "NYSDFS") states and alleges as follows:

**Jurisdiction and Venue**

1.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Age Discrimination in Employment Act of 1967 ("ADEA"), to correct unlawful and discriminatory and retaliatory practices on the basis of disability and age and to provide appropriate relief to Plaintiff Barbara O'Connor, an employee who was adversely

1

affected by such practices.

2. This Court has original jurisdiction over this action, and each count, pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

3. Venue of this action in the United States District Court for the Northern District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to unlawful discrimination and retaliation by Defendant in Albany County, New York, within the Northern District of New York, and a substantial part of the events giving rise to these claims, occurred in said locale.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a Complaint with the United States Equal Employment Opportunity Commission ("EEOC") under Federal Charge Number 16GC000825.

5. Plaintiff was issued a Right To Sue letter by the EEOC, which was dated October 13, 2020, but only received by Plaintiff on April 21, 2021, fewer than 90 days from the date hereof (Attached collectively hereto as Exhibit "**A**") and Plaintiff files the instant Complaint within 90 days from her receipt of the "Right To Sue Letters" dated March 30, 2021.

6. Due to Clerical error on the part of the EEOC, which clerical error was acknowledged in an e-mail from the EEOC to Counsel for Plaintiff, the Right To Sue letter was not received by Plaintiff's counsel until April 21, 2021. (See e-mail dated April 21 2021, attached as Exhibit "**B**" in which the EEOC explicitly granted Plaintiff a 90 day window to file the instant Complaint, beginning April 21, 2021).

7. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of New York, where Plaintiff was employed by NYSDFS at all relevant times hereto.

8. The employment practices complained of herein, including disability discrimination, and age discrimination and retaliation and hostile work environment were intentional and malicious in nature.

## PARTIES

9. Plaintiff, Barbara O'Connor, a female resident of Schenectady, New York, who was at all times relevant hereto, over the age of 40, was at all relevant times hereto an employee of Defendant NYSDFS where she began her employment on November 4, 2010 as a "Human Resources Specialist I", and where she continues to be employed.

10. Defendant, New York State, Department of Financial Services, employed Plaintiff at times relevant to this Complaint. NYSDFS is the regulator of the Insurance Business in the State of New York, regulating persons and entities that conduct Insurance business in the State, including insurance companies, agents, brokers, adjusters and bail bondsmen.

11. Defendant is headquartered in Albany, New York, within the jurisdiction of the Northern District of New York, and has continuously had at least 15 or more employees.

12. The Defendant, upon information and belief, has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

## STATEMENT OF CLAIMS

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

14. On or about November 19, 2019, Plaintiff filed a Verified Complaint with the NYSDHR and USEEOC alleging that Defendant unlawfully discriminated against her in the course of her employment on the basis of her disability, age and that Defendant retaliated against

her in violation of the ADA, ADEA and NYS Human Rights Law.

15. Plaintiff also alleged that Defendant created a Hostile Work Environment for her on her workplace.

16. In 2010, Plaintiff began her employment at the NYS Dept of Financial Services (NYSDFS), when said agency was known at the time as the "NYS Department of Insurance".

17. When Plaintiff began her employment with Defendant, she was a "55b disabled employee". As such, Defendant had actual and constructive notice of her status as a disabled person who suffered from Hearing Loss, Depression, as well as Post Traumatic Stress Disorder ("PTSD").

18. Plaintiff worked as a "Human Resources Specialist" (then called Personnel Administrator) in the Human Resources office.

19. Plaintiff has been discriminated against on the basis of her disabilities over the years, including having been refused requests for reasonable accommodations, despite having been supported by physicians, her audiologist, and even a nurse who was employed by Defendant-agency.

20. Defendant denied Plaintiff training, which training was given to other non-disabled employees whom were younger than Plaintiff.

21. Defendant denied Plaintiff promotion opportunities in favor of less qualified employees whom were younger than Plaintiff.

22. For example, Plaintiff was told during an interview for a promotion that she did not get the job promotion for which Plaintiff had applied, during which, the interviewer made repeated references to Plaintiff's disability and her status as a 55b employee. Despite that said particular event occurred outside the statute of limitations, it is notable that her disability was

invoked during said interview and also probative of Defendant's treatment of Plaintiff, generally.

23. In September 2017, Plaintiff was suddenly informed by her superiors, Chad Losbaugh and Tammy Jerome that she was going to be moved out of Human Resources ("HR") involuntarily, with no reason given.

24. Plaintiff was removed from HR despite having a stellar work record and no work-related performance issues.

25. Younger employees at the Albany office in Plaintiff's job title were not removed from HR as was Plaintiff.

26. Plaintiff has been prevented from doing her job in Human Resources since that time period, including during relevant time periods within 300 days prior to filing her Complaint with the NYSDHR in November of 2019.

27. During the one-year period prior to filing her Complaint with the NYSDHR, Plaintiff was quite literally prevented by Defendant from doing any work at all in her field of Human Resources, despite that Plaintiff is a trained professional in the HR field.

28. Plaintiff was discriminated against and subjected to retaliation and harassment based on her disability and her age.

*10/5/2017:  Because I was going to be involuntarily taken out of my job, I sought and received a promotion to the NYS Office of General Services (OGS). My supervisor there, Robyn Dare, was abusive so I called DFS back in the first week and said I wanted to return to my hold job. Tomlynn Yacono said it was "unfortunate" when I told her I was returning and said that I had to wait three weeks to return to "put things into place".*

5

*When I returned to my hold position on 10/26/17, Tammy Jerome informed me that I could not return to HR because "we already filled your job", which is against Civil Service Rule 4.5 and the NYS Personnel Management Manual (SPMM), both of which stated at the time that an employee returning to a hold MUST be returned to that position and anyone hired into the job the returning employee vacated must be bumped back to their prior position. It was also the likely reason I was made to wait three weeks to come back: so that they could fill my job. This may also have been the reason for them to decide to remove me from HR in September 2017.*

29. Defendant unilaterally removed Plaintiff from her job in HR and placed her on another floor in a non-Human Resources Division (Community and Regional Banks) after which she was tasked by Defendant with doing entry level clerical work such as photocopying, scanning, and filing Banking documents, despite being a professional level HR employee.

30. Plaintiff's computer permissions were rescinded.

31. Defendant subjected Plaintiff to the foregoing adverse employment actions while leaving younger, non-disabled employees in the Human Resources Department, strongly inferring that said disparate treatment occurred because of Plaintiff's disability and age.

32. In addition, after Plaintiff was forced out of her former office in Human Resources, and placed on another floor into a non-Human Resources Division (Community and Regional Banks) she was not allowed to return to any of her HR duties despite that they were "hold" duties to which Defendant was required to place her.

33. While it is true that Plaintiff was, at all times relevant, technically kept in the same title, she was stripped of the very work she was hired to do, and from the department (HR) that she had chosen to work in, all of which has resulted in the stagnation of her career and the inability to be promoted, to be passed over for promotions, and to be denied training, during the

statutory period including the one year prior to filing her complaint in the NYSDHR in November of 2019.

34. When Plaintiff called to complain about the foregoing adverse employment actions, she was told by the clerk that: she was no longer employed in HR, instead being assigned to Banking; she had a new non-HR supervisor; all of Plaintiff's HR computer permissions had been rescinded; she was being assigned only *clerical work* such as photocopying and filing despite being in a professional level position.

35. Defendant has prevented Plaintiff from performing the duties of her job title, through to the present day.

36. Plaintiff has been prevented from taking HR-related classes to retain keep up with Human Resources field; her field of expertise, so that she ceased being considered for any HR-related positions.

37. Starting in December of 2018, after Plaintiff had attempted to duly complain about the foregoing discrimination, Defendant retaliated against Plaintiff, by refusing to assign Plaintiff *any work*, despite repeated requests, such that Plaintiff was forced to sit all day doing nothing for a period of approximately one year.

38. The foregoing transfer and retaliation had the effect of derailing Plaintiff's career, not to mention her emotional and mental health, and was tantamount to the creation of a hostile work environment.

39. Plaintiff made efforts to complain and to get answers on why she had been removed from Human Resources, her chosen field of expertise, to no avail.

40. Plaintiff duly complained to OMCE about her situation, and on their advice, she wrote a complaint-letter to her then-supervisor, Matt Fagan; again, to no avail. Defendant did not

remedy the adverse employment action referenced herein-above.

41. Defendant retaliated against Plaintiff for said Complaint letter by immediately transferring Plaintiff to another non-HR unit, doing work that was again not within her chosen field of Human Resources and did not include duties within the job description of a Human Resources Specialist 1.

42. Scott Gollop, a former Human Resources employee who was also over the age of 40, was also reassigned from HR to the LEAN unit. He was also taken out of his HR job by Defendant involuntarily and placed in the LEAN unit and was very despondent about this transfer.

43. At one point, while Plaintiff was struggling to resume her career as a HR Specialist, a Human Resources Specialist 2 position – which would have been a promotion for Plaintiff - was posted, and instead of posting it for the normal 10 working days as required, Defendant posted it for the exact days Plaintiff was out on vacation, presumably so she would not see the posting.

44. Plaintiff applied nonetheless, but predictably, was not considered for the HR position/promotion.

45. Another person, who was – on information and belief, younger than Plaintiff and not hearing impaired - got the promotion.

46. Once again on December 20, 2018, another HRS2 job was posted, and Plaintiff once again applied for it, but again was not considered for the promotion by Defendant, despite being qualified.

47. A non-hearing-impaired person was hired, and then promoted within a short time.

48. Overall, there have been many hires and promotions that Plaintiff was qualified

and eligible for that she was not considered for.

49. On October 2, 2019, Plaintiff asked to speak privately with her supervisor, Marie Barhold, whom she had been emailing continuously for many months asking for work but who consistently ignored Plaintiff.

50. Plaintiff told her Supervisor that she needed work to do and that it was like torture for her to not have any work assigned to her.

51. Plaintiff asked Barhold if she was told not to give Plaintiff work or if she had ever been told why Plaintiff was taken out of HR to which Barhold responded that since Plaintiff had filed an Out of Title Grievance complaining about the discrimination alleged herein-above, Barhold had been told by Human Resources to "be careful" with what work Plaintiff was given as it had to be work that was in Plaintiff's title (which it hasn't been for a long time).

52. However, since Barhold was not an HR person, and worked in the budget division, she had no Human Resources work to give her.

53. Plaintiff has been overlooked for promotion time and time again, despite having a stellar work record, no personality conflicts, no time issues or anything else to explain this.

54. Often, despite her age and disability, Plaintiff was passed over for promotions even though she was at the top of, or the only person on, the promotion list.

55. Indeed, on one relatively recent Civil Service exam Plaintiff took, she received a score of 95, which was higher than everyone who was then in her agency, and this was after two years of being sabotaged, retaliated against and prevented from doing her job.

56. Despite this, virtually all the people that have been hired or promoted were not hearing impaired, and also tended to be overwhelmingly younger than Plaintiff, and had less education and experience than she did.

57. On several occasions people from outside the agency who were not hearing impaired were promoted despite that Plaintiff, a hearing-impaired woman was on the promotion list, often the only one on that list.

58. Despite the fact that her work was routinely praised by various managers, Plaintiff was literally removed from her job and placed in non-HR divisions doing out of title much lower-level work or nothing at all.

59. She was not allowed to return to her "hold duties", which is against Civil Service Law.

60. All of this has resulted in a hostile and toxic work environment described hereinabove.

61. Because Plaintiff has not been allowed to do her job, her expertise in HR has faded, due in part to lack of training and failure of Defendant to promote her through the ranks as her non-disabled peers were.

62. Despite Plaintiff's requests, she has not been able to take classes to retain her expertise, although she has retained enough to get the highest score in the agency (95) on a recent Civil Service exam for a promotional title.

63. All of Plaintiff's computer permissions were rescinded while she was placed outside of her chosen field of HR, so that for several months, she was unable to even read up on HR laws, rules and regulations to retain her expertise, nor was Plaintiff able to tell when people were hired or promoted.

64. There has never been a work issue such as an attendance issue, a work quality issue, or other issue with Plaintiff's employment that might have otherwise justified such horrific treatment.

65. In fact, Plaintiff's supervisors and managers have told her repeatedly how excellent her work has tended to be.

66. Plaintiff is Hearing-Impaired; and as a result of said disability, which causes her difficulty hearing in certain situations, and which requires intermittent accommodations in the workplace, Defendant has discriminatorily adjudged her to be less competent and treated her as such.

67. Defendant failed utterly in its duty to either accommodate Plaintiff and also failed to even engage in the required interactive process.

68. Defendant failed utterly to engage in the required interactive process in terms of exploring ways in which Plaintiff could have been accommodated without being removed from HR.

69. Plaintiff duly performed and was able to perform the essential functions of her position at all times relevant hereto despite her condition/disability (Hearing-Loss) and despite having a qualified disability that can affect hearing, certain forms of communications, each a major life activity.

70. Plaintiff could certainly have performed the essential functions of her position in HR had Defendant engaged in the interactive process with her, but Defendant chose instead to affirmatively ignore any accommodations Plaintiff sought.

71. Plaintiff suffered severe emotional distress as a direct and proximate cause of Defendant's sabotaging of her career and because of the hostile work environment described herein-above, for which she is entitled to relief in an amount to be proven at or before trial, which amount exceeds the jurisdictional minimum amount required to be in controversy in the present court.

72. Plaintiff suffered actual monetary damages in the form of lost wages, loss of career advancement and lost promotions, for which she is entitled to relief.

73. Plaintiff's costs, including include attorneys' fees continue to accrue.

74. The present Complaint shall have been filed in the Federal District Court, Northern District of New York, fewer than 90 days after receiving the Right To Sue letter from the Equal Employment Opportunity Commission.

75. As a direct and proximate result of Defendant's discrimination, retaliation and harassment against Plaintiff, Plaintiff has suffered damages in an amount to be determined at trial, including, but not limited to, the loss of her career at NYSDFS, lost wages, lost promotion opportunities, related fringe benefits, and other forms of compensation, including retirement benefits, as well as loss of career opportunity and advancement, in amounts yet to be determined at or before trial.

**Count I. Disability Discrimination in violation of Americans With Disabilities Act.**

Defendant discriminated against Plaintiff in employment on the basis of her disability in violation of Americans with Disabilities Act of 1990 ("ADA"). Defendant discriminated against Plaintiff, a disabled employee who suffered from a qualified disability when, because of Plaintiff's membership in said protected class, failed to accommodate her or to engage in the required interactive process, subjected her to adverse conditions in employment as set forth hereinabove thus causing her lost promotions, missed career advancement, pecuniary harm, emotional distress damages as well as out of pocket costs.

**Count II. Disability Discrimination in violation of NYS Human Rights Law:**

Defendant discriminated against Plaintiff in employment on the basis of her disabilities in violation of N.Y. Exec. Law, art. 15 (NYS Human Rights law). Defendant discriminated against

Plaintiff in employment on the basis of her disability in violation of NYS Human Rights law. Defendant discriminated against Plaintiff, a disabled employee who suffered from a qualified disability when, because of Plaintiff's membership in said protected class, failed to accommodate her or to engage in the required interactive process, subjected her to adverse conditions in employment as set forth hereinabove, thus causing her lost promotions, missed career advancement, pecuniary harm, emotional distress damages as well as out of pocket costs.

**Counts III & IV: Age Discrimination in Violation of the Age Discrimination in Employment Act of 1967 and N.Y. Exec. Law, art. 15 (NYS Human Rights law):**

Defendant discriminated against Plaintiff, an employee over the age of 40 (born in 1954) when, because of Plaintiff's membership in said protected class, subjected her to adverse conditions in employment as set forth hereinabove, thus causing her lost promotions, lost career advancement, pecuniary harm, emotional distress damages as well as out of pocket costs.

**Counts V, VI, Hostile work Environment in violation of ADA, & ADEA:**

Defendant created and tolerated a work environment which was permeated with discriminatory and intimidation, ridicule, and insult that was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment and which created an abusive work environment is in violation of the ADA, the ADEA and NYS Human Rights Law.

**Counts VII, VIII, IX. Retaliation in violation of the ADA and ADEA, and NYS Human Rights Law:**

Defendant retaliated against Plaintiff after Plaintiff lawfully opposed Discrimination in employment under circumstances which strongly infer that said adverse employment action was causally related to Plaintiff's lawful opposition to discrimination.

13

## PRAYER FOR RELIEF

**Wherefore**, the Plaintiff respectfully requests that this Court:

A.	Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from mistreating, or harassing qualified individuals from employment, discriminating or retaliating against employees due to disability or age.

B.	Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities to all employees, and which protect employees from unlawful discrimination on the basis of disabilities or age.

C.	Order Defendant Employer to make whole Barbara O'Connor by providing appropriate back pay, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.	Order Defendant Employer to make whole Barbara O'Connor by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, in amounts to be determined at trial.

E.	Order Defendant Employer to make whole Barbara O'Connor by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination complained of herein-above, which caused emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.	Grant such further relief as the Court deems necessary and proper in the public interest.

## **JURY TRIAL DEMAND**

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

S://  James D. Hartt
**JAMES D. HARTT, ESQ.,**
**Attorney For Plaintiff-Admitted to**
**Practice in NDNY Federal Court**
**6 N. Main Street, Suite 200-F**
**Fairport, NY 14450**
**Telephone: (585) 490-7100**
**Fax: 1 (716) 299-2006**

ORIGINAL of the foregoing was
filed this 19th Day of July, 2021 with:
The Clerk of the Federal District Court
Northern District New York District