**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BARBARA O'CONNOR,

                    Plaintiff,                    1:21-cv-00828 (BKS/ATB)

v.

NEW YORK STATE DEPARTMENT OF
FINANCIAL SERVICES,

                    Defendant.

**Appearances:**

*For Plaintiff:*
James D. Hartt
Attorney at Law
6 N. Main Street, Suite 200-F
Fairport, New York 14450

*For Defendant:*
Letitia James
Attorney General of the State of New York
Ryan W. Hickey
Assistant Attorney General, of Counsel
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Barbara O'Connor brings this employment discrimination action against her

employer, Defendant New York State Department of Financial Services ("DFS"). (Dkt. No. 7).

Plaintiff alleges that Defendant subjected her to disability discrimination, a hostile work

environment, and retaliation, in violation of Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 701 et seq. (*Id.*). Defendant moves to dismiss the Amended Complaint under Federal

Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim.[1] (Dkt. No. 13). Plaintiff

opposes Defendant's motion. (Dkt. No. 18). For the reasons that follow, Defendant's motion is

granted.

## II.    FACTS[2]

### A.    Plaintiff's Employment in DFS's Human Resources Department

Plaintiff was hired in 2010 by DFS (then called New York State Department of

Insurance) as a Human Resources Specialist. (Dkt. No. 7, ¶¶ 16, 18). When Plaintiff began her

employment at DFS, she was designated a "55b disabled employee"[3] due to hearing loss,

depression, and Post Traumatic Stress Disorder ("PTSD"). (*Id*. ¶ 17). As a result of Plaintiff's

hearing loss, she "has difficulty in certain situations" which requires "intermittent

accommodations in the workplace." (*Id*. ¶ 65).

Plaintiff asserts that, throughout her time as a Human Resource Specialist at DFS, there

have never been any complaints about the quality of her work or her attendance. (*Id*. ¶ 63).

Plaintiff submits that "[her] supervisors and managers have told her repeatedly how excellent her

work has tended to be." (*Id*. ¶ 64). Further, Plaintiff reports that on a "relatively recent" Civil

Service exam, she received a score of 95, which was "higher than everyone who was then in her

agency." (*Id*. ¶ 54).

---

[1] Defendant also moved to dismiss under Rule 12(b)(5) for insufficient service of process. (Dkt. No. 13). The Court denied Defendant's motion in a separate order and extended the service period. (Dkt. No. 25). Plaintiff appears to have perfected service in this case. (Dkt. No. 26). Accordingly, the Court may properly address Defendant's motion to dismiss under Rule 12(b)(6).

[2] The facts are drawn from the Amended Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] New York Civil Service Law § 55-b provides that the state "may determine up to twelve hundred positions with duties such as can be performed by persons with a physical or mental disability who are found otherwise qualified to perform satisfactorily the duties of any such position." Such positions are classified as "noncompetitive" and may be filled only by individuals certified as having "either a physical or mental disability." *Id.*

B.      **Plaintiff's Transfer out of DFS's Human Resources Department**

Although Plaintiff had a "stellar work record" and "no work-related performance issues,"
in September 2017, Plaintiff was "suddenly" informed by her supervisors that she was going to
be removed from the HR department—there was "no reason given." (*Id*. ¶¶ 23–24). "[D]espite
being a professional level HR employee," Plaintiff was moved to a "non-Human Resources
division," Community and Regional Banks, where she was tasked with entry level clerical work
such as photocopying, scanning, and filing banking documents. (*Id*. ¶ 28).

Although Plaintiff retained her title of Human Resources Specialist after the transfer, she
was not permitted to return to any of her HR duties even though they were "hold" duties "to
which Defendant was required [by Civil service law] to place her." (*Id*. ¶¶ 31–32). When
Plaintiff called to complain about her transfer out of HR, she was told by a clerk that she was no
longer employed in HR, she had a new non-HR supervisor, her HR computer permissions had
been rescinded, and that she was now being assigned only clerical work such as photocopying.
(*Id*. ¶ 33). Further, Plaintiff alleges that, throughout this period, Defendant also prevented her
from taking HR-related classes. (*Id*. ¶ 35).

Beginning in December 2018, Plaintiff alleges she was not assigned any work at all,
despite repeated requests, such that she was "forced to sit all day doing nothing for . . .
approximately one year." (*Id*. ¶ 36). Plaintiff complained to the Organization of
Management/Confidential Employees ("OMCE") who directed her to write a complaint-letter to
her then supervisor, Matt Fagan. (*Id*. ¶ 39). After Plaintiff sent the complaint-letter she was
"immediately" transferred to "another non-HR [department]" where she continued to be assigned
work outside of the field of Human Resources. (*Id*. ¶ 40).

On December 20, 2018, Plaintiff applied for a human resources promotion "but again was not considered for the promotion by Defendant, despite being qualified." (*Id.* ¶ 44). "A non-hearing-impaired person was hired, and then promoted within a short time." (*Id.* ¶ 45).

On October 2, 2019, Plaintiff asked to speak privately with her supervisor, Marie Barhold, whom she had been "emailing continuously" asking for additional tasks to no avail. (*Id.* ¶ 47). During this conversation, Plaintiff told Barhold that she needed work and that "it was like torture . . . not to have any work assigned to her." (*Id.* ¶ 48). Plaintiff also asked Barhold if she had been instructed not to give Plaintiff work or if she had been told why Plaintiff was transferred out of HR. Barhold responded that "since Plaintiff had filed an Out of Title Grievance" Barhold "had been told by the Human Resources to 'be careful' with what work Plaintiff was given as it had to be work that was 'in Plaintiff's title.'" (*Id.* ¶ 49). Plaintiff asserts that because Barhold worked in the budget division, she did not have Human Resources work to assign Plaintiff that would have been considered "in Plaintiff's Title." (*Id.* ¶¶ 49–50).

### C.    Human Resources Promotion Decisions

Plaintiff submits that, before her transfer out of HR, she interviewed but was not selected for a promotion within the Human Resources department. (Dkt. No. 7, ¶ 22).[4] Plaintiff alleges that during this interview "the interviewer made repeated references to Plaintiff's disability and her status as a 55b employee." (*Id.*).

After Plaintiff was transferred out of the HR department in September 2017, she continued to apply to higher level positions within the department. (Dkt. No. 7). Plaintiff claims that "at one point" a Human Resources Specialist 2 position—which would have been a

---

[4] Plaintiff did not provide a date for that interview but acknowledges that it was "outside the statute of limitations." (*Id.*).

promotion for Plaintiff—was posted by Defendant. (*Id.* ¶ 41). However, instead of posting the position for the "normal 10 working days as required," Defendant posted it for the "exact days" Plaintiff was on vacation. (*Id.*). Plaintiff applied to the position but was not considered for the promotion. (*Id.* ¶ 42). As noted above, on December 20, 2018, another Human Resources Specialist 2 position was posted but Plaintiff was again not considered "despite being qualified." (*Id.* ¶ 44). In both instances, Plaintiff reports that "non-hearing impaired" individuals were promoted over her. (*Id.* ¶¶ 43, 45).

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   DISCUSSION

### A.   Qualifying Disability under the Rehabilitation Act

Defendant moves to dismiss Plaintiff's disability discrimination and hostile work environment claims on the ground that the Amended Complaint fails to allege Plaintiff suffers from a disability within the meaning of the Rehabilitation Act. (Dkt. No. 13-6, at 9–13). Plaintiff opposes Defendant's motion. (Dkt. No. 18, at 15–17).

"The Rehabilitation Act defines the term 'individual with a disability' by cross reference to the Americans with Disabilities Act." *Martinez v. N.Y. State Div. of Human Rights*, No. 13-cv-1252, 2015 WL 437399, at *5, 2015 U.S. Dist. LEXIS 12536, at *14 (S.D.N.Y. Feb. 2, 2015) (citing 29 U.S.C. § 705(20)(B)). The ADA defines a "disability" as: (A) "a physical or mental impairment that substantially limits one or more major life activities of [an] individual" (the "actual disability" prong); (B) "a record of such an impairment" (the "record of" prong); or (C) "being regarded as having such an impairment" (the "regarded as" prong). 42 U.S.C. § 12102(1). "Major life activities" include "eating, sleeping, walking, standing, lifting, . . . and working," among other activities. *Id.* § 12102(2)(A); 29 C.F.R. § 1630.2(i). "[T]the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v Strada*, 949 F.3d 89, 94 (2d Cir. 2020)). Indeed, even "temporary injuries are actionable—for establishing an actual disability claim under the ADA." *Hamilton*, 3 F.4th at 94.

Courts utilize a three-step approach for determining whether an individual has a disability for purposes of the Rehabilitation Act. A plaintiff must: (1) "show that she suffers from a physical or mental impairment"; (2) "identify the activity claimed to be impaired and establish that it constitutes a 'major life activity'"; and (3) "show that her impairment 'substantially limits' th[at] major life activity." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (citing *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998)).

Defendant does not dispute that Plaintiff's allegation that she suffers from hearing loss, depression, and PTSD, (Dkt. No. 8, ¶ 17), is sufficient to satisfy the first step, (Dkt. No. 13-6, at 11). *See also Oyer v. New York State*, 19-cv-1201, 2020 WL 5642186, at *5, 2020 U.S. Dist. LEXIS 173868, at *12 (W.D.N.Y. Sept. 22, 2020) ("Plaintiff has satisfied the first of these

prongs, having alleged that he suffers from PTSD."). And while Plaintiff's allegation of hearing

loss is sufficient to satisfy the second step as hearing constitutes a "major life activity," *see*

*Geoghan v. Long Island R.R.*, No. 06-cv-1435, 2009 WL 982451, at *10, 2009 U.S. Dist. LEXIS

30491, at *31 (E.D.N.Y. Apr. 9, 2009) (observing that "[h]earing loss has been widely accepted

as a legitimate impairment with the potential to substantially limit life activities" (citing *Miller v.*

*Taco Bell Corp.*, 204 F. Supp. 2d 456, 463 (E.D.N.Y. 2002))), Plaintiff fails to identify any

activity that her depression or PTSD impairs. But even assuming Plaintiff sufficiently alleged the

first two steps with respect to hearing loss, depression, and PTSD, the Amended Complaint is

devoid of factual details that would allow an inference that these impairments "substantially

limit" any major life activity. Plaintiff alleges that her hearing impairment "causes her difficulty

hearing in certain situations" and "can affect hearing, certain forms of communications." (Dkt.

No. 7, ¶¶ 65, 68). These vague and equivocal allegations reveal nothing about Plaintiff's hearing

loss. Moreover, there are no allegations whatsoever addressing Plaintiff's depression or PTSD.

While courts broadly apply the term "substantially limits," a "Plaintiff still must plead sufficient

facts to raise a right to relief above a speculative level." *Witz v. N.Y. Univ.*, No. 18-cv-123, 2019

WL 721658, at *8 n.20, 2019 U.S. Dist. LEXIS 17711, at *22 n.20 (S.D.N.Y. Feb. 1, 2019),

*report and recommendation adopted*, 2019 WL 720700, 2019 U.S. Dist. LEXIS 26958

(S.D.N.Y., Feb. 19, 2019); *see Laface v. Easter Suffolk, BOCES*, 18-cv-1314, 2020 WL

2489774, at *10, 2020 U.S. Dist. LEXIS 85343, at *27 (E.D.N.Y. May 14, 2020) ("Even upon

identifying a major life activity, a Plaintiff must allege facts 'that would allow the Court to draw

an inference' of a disability's substantial effect on a major life activity."); *Cain v. Mandl Coll. of*

*Allied Health*, No. 14-cv-1729, 2017 WL 2709743, at *4, 2017 U.S. Dist. LEXIS 96917, at *8

(S.D.N.Y. June 22, 2017) ("Vague, conclusory assertions without details on how her condition

actually affects a major life activity are insufficient."). The Court therefore concludes that Plaintiff fails to allege that she is disabled within the meaning of the Rehabilitation Act. *See Cain*, 2017 WL 2709743, at *4, 2017 U.S. Dist. LEXIS 96917, at *8 (denying the plaintiff's motion to amend where the plaintiff failed to "provide any factual support detailing the frequency, duration, or severity of any limitations on a life activity caused by her PTSD"). Accordingly, Plaintiff's discrimination and hostile work environment claims are subject to dismissal on this basis.[5]

### B.   Discrimination

Defendant also moves to dismiss Plaintiff's discrimination claim on the ground that Plaintiff fails to allege any facts giving rise to a plausible inference of disability discrimination. (Dkt. No. 13-6, at 27–31). As Defendant notes in its reply, (Dkt. No. 23, at 16), Plaintiff wholly failed to respond to Defendant's argument on this issue. The Court finds that Plaintiff's failure to plausibly allege disability discrimination is an alternative basis for dismissal.

A Rehabilitation Act discrimination claim is subject to the "burden-shifting analysis established for employment discrimination cases" set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002) (analyzing claims of intentional discrimination under, inter alia, the ADA and the Rehabilitation Act under the *McDonnell Douglas* framework). As this motion is one to dismiss, however, the Court "focus[es] only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell*

---

[5] Nothing in Plaintiff's submissions suggests she seeks to proceed under a "regarded as" theory. *See* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."). The Court, therefore, does not address that theory here.

*Douglas* in the initial phase of a litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). Thus, to defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her]," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); and (2) "that she would not have experienced the adverse employment action but for her . . . disability," *see Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-cv-2011, 2022 WL 3100663, at *8, 2022 U.S. Dist. LEXIS 139134, at (S.D.N.Y. Aug. 4, 2022) ("A plaintiff may show her race or national origin was a motivating factor for the adverse action 'by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" (quoting *Vega*, 801 F.3d at 87)); *see also Natofsky v. City of New York*, 921 F.3d 337, 346, 348 (2d Cir. 2019) ("[C]onclud[ing] that the Rehabilitation Act incorporates the ADA's causation standard for employment discrimination claims" and "that the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action"). A complaint is sufficient "if it pleads specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).

### 1.    Adverse Action

In addition to alleging Plaintiff was denied promotions, Plaintiff's Amended Complaint alleges denial of training, deprivation of work, and assignment of entry-level clerical, rather than HR, work. (Dkt. No. 7, ¶¶ 28, 35, 40, 57). However, it appears, from her Amended Complaint and briefing, that Plaintiff solely relies on the alleged promotion denials as the adverse actions for purposes of her discrimination claim. (*See* Dkt. No. 7, at 12 (alleging that Defendant discriminated against her in connection with "lost promotions" and "missed career advancement"); Dkt. No. 18, at 20–21 (arguing that Plaintiff was denied promotions but that non-hearing impaired employees and non-hearing impaired individuals outside the agency were

hired or promoted)). Indeed, Defendant's arguments assume the two instances of denied promotions specified in the Amended Complaint are the adverse actions at issue. (*See* Dkt. No. 13-6, at 20 (arguing that "the only two specifically identified positions that Plaintiff applied for but did not get" are the HRS2 positions)). The Court, accordingly, construes the Amended Complaint as alleging the promotion denials as the challenged adverse actions. In any event, even assuming Plaintiff seeks to assert denial of training, deprivation of work, and assignment of entry-level clerical, rather than HR, work as adverse actions for purposes of her discrimination claim, because, as discussed below, Plaintiff fails to allege facts showing Defendant took any action because of disability animus, her discrimination claim nonetheless fails.

## 2.    Inference of Discrimination

A "[p]laintiff can demonstrate an inference of discrimination several ways, including allegations of preferential treatment given to similarly situated individuals, and remarks that convey discriminatory animus." *Brown v. New York City Dep't of Educ.*, No. 20-cv-2424, 2021 WL 4943490, at *7, 2021 U.S. Dist. LEXIS 181382, at *18 (S.D.N.Y. Aug. 31, 2021) (citing *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011)), *report and recommendation adopted*, 2021 WL 4296379, 2021 U.S. Dist. LEXIS 180026 (S.D.N.Y. Sept. 20, 2021). Here, Plaintiff alleges in wholly conclusory terms that "[a] non-hearing-impaired person was hired," for the promotions, (Dkt. No. 7, ¶ 45), "[a]nother person, who was—on information and belief, not hearing impaired—got the promotion," (*id.* ¶ 43), and "[o]n several occasions people from outside the agency who were not hearing impaired were promoted," (*id.* ¶ 56)). These "naked assertions" of discriminatory treatment, unaccompanied by any concrete facts, do not allow a plausible inference of discrimination because of disability. *Karim v. New York City Health & Hosps. Corp.*, No. 17-cv-6888, 2019 WL 1495098, at *6, 2019 U.S. Dist. LEXIS 37008, at *17 (S.D.N.Y. Mar. 6, 2019) ("Plaintiff's 'naked assertions' concerning

similarly-situated white, non-Muslim applicants receiving privileges 'upon information and belief' are insufficient to raise an inference of discrimination and do not provide at least minimal support for the proposition that the employer was motivated by discriminatory intent."); *see also Lopez v. Advantage Plumbing & Mech. Corp.*, No. 15-cv-4507, 2016 WL 1268274, at *4, 2016 U.S. Dist. LEXIS 43608, at *10 (S.D.N.Y. Mar. 31, 2016) (dismissing § 1981 racial discrimination claim because the "[p]laintiffs' failure to allege the facts that form the basis for [their] belief that similarly-situated co-workers were paid [more than them], combined with [p]laintiffs' failure to identify any particular 'comparators,' precludes [p]laintiffs from pleading 'upon information and belief' in this circumstance" (internal quotation marks and citation omitted)); *see also Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (finding that even if the plaintiffs' allegations "'[u]pon information and belief' that the Academy promoted to sixth grade 'non-Muslim students from families of non-Albanian origin' who had test scores and grades similar to Abedin" "might be 'consistent' with a Title VI violation, they stop short of the line between possibility and plausibility of entitlement to relief").

Nor does the Amended Complaint allege facts, such as remarks conveying discriminatory animus, that would allow a plausible inference of disability animus. The strongest allegation in the Amended Complaint is Plaintiff's assertion that "during an interview for a promotion that she did not get . . . the interviewer made repeated references to Plaintiff's disability and her status as a 55b employee." (Dkt. No. 7, ¶ 22). However, Plaintiff fails to indicate what the interviewer said that constituted a reference to Plaintiff's disability—whether, for example, the interviewer mentioned hearing loss, depression, or PTSD. But even assuming the interviewer's alleged reference to Plaintiff's "status as a 55b employee," shows disability animus, Plaintiff acknowledges this "particular event occurred outside the statute of limitations," i.e., before July

19, 2018, thus, alone, it does not state a viable claim for relief. (*Id.*). Further, because Plaintiff does not provide any additional facts, such as the identity of the interviewer or the position for which she was interviewing, it would therefore be speculative to infer that any discriminatory animus the "interviewer" had with respect to Plaintiff's disability could be connected to the December 20, 2018 denial of an HRS2 promotion, (*id.* ¶ 44), or any other denied promotion or alleged adverse action, (*id.* ¶ 41). *See, e.g.*, *Bowman v. Granny's Kitchen, LLC*, No. 14-cv-00585, 2015 WL 541276, at *4, 2015 U.S. Dist. LEXIS 15689, at *8 (N.D.N.Y. Feb. 10, 2015) ("Although discriminatory comments directed at Plaintiff and his racial group are a recognized method of establishing discriminatory intent, he fails to allege facts tying the racial comment to his termination."); *Khalil v. Pratt Inst.*, No. 16-cv-6731, 2019 WL 1052195, at *8, 2019 U.S. Dist. LEXIS 24529, at *24 (E.D.N.Y. Feb. 13, 2019) (dismissing discrimination claim finding that there was "no allegation tying this purportedly discriminatory assignment to" the alleged adverse action—the defendant's "ultimate decision to administratively withdraw" the plaintiff from school), *report and recommendation adopted*, 2019 WL 1046248, 2019 U.S. Dist. LEXIS 35079 (E.D.N.Y. Mar. 4, 2019). Accordingly, Plaintiff's discrimination claim must be dismissed for this alternative reason.

### C.     Hostile Work Environment

Defendant seeks dismissal of Plaintiff's hostile work environment claim. "To establish a hostile work environment  . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 399 (E.D.N.Y. 2016) (employing "the standards applicable to a hostile work environment claim in the Title VII context" to

Rehabilitation Act hostile work environment claim); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (employing standards applicable to Title VII hostile work environment claim to ADA hostile work environment claim).

Having found Plaintiff fails to allege disability, and fails to allege any facts suggesting animus based on disability, Plaintiff's claim that Defendant subjected her to a hostile work environment based on disability fails. *See Gong v. City Univ. of N.Y.*, 846 F. App'x 6, 9 (2d Cir. 2021) (affirming dismissal of hostile work environment claim at motion to dismiss stage where "many of the alleged incidents lack any racial overtone"); *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (dismissing complaint because even assuming the "alleged events amounted to . . . [a] hostile work environment . . . the complaint did not plausibly allege that the [the defendant] discriminated against [the plaintiff] because of a perceived mental impairment, 'nor d[id] it set forth any factual circumstances from which a [disability ]-based motivation for such an action might be inferred.'" (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)); *Sotolongo v. New York State Dep't of Motor Vehicles*, No. 19-cv-3282, 2020 WL 4261194, at *5, 2020 U.S. Dist. LEXIS 131033, at *13 (E.D.N.Y. July 24, 2020) ("[C]rucially, Sotolongo fails to allege that the treatment of which she complains was connected in any way to her protected status, which is fatal to her hostile work environment claim."). Accordingly, Plaintiff's hostile work environment claim is dismissed.

### D.   Retaliation

Defendant moves to dismiss Plaintiff's retaliation claim on the basis that Plaintiff fails to allege she engaged in any protected activity or that any of "Defendant's alleged acts were 'causally connected' to Plaintiff's alleged complaints." (Dkt. No. 13-6, at 19–27). Plaintiff opposes Defendant's motion. (Dkt. No. 18, at 23–25).

"[T]he elements of a retaliation claim under either [the Rehabilitation Act] or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (quoting *Weixel*, 287 F.3d at 148); *see Vega*, 801 F.3d at 90 (explaining that for a Title VII "retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants . . . took an adverse employment action—against [her], (2) 'because' [she] has opposed any unlawful employment practice."). "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

### 1.     Protected Activity

Here, Plaintiff alleges: (1) that she complained on several occasions "about the . . . adverse actions," (Dkt. No. 7, ¶ 33), and "the foregoing discrimination" she was experiencing, (*id.* ¶ 36); (2) that she complained to OMCE, "about her situation, and on their advice, she wrote a complaint letter to then-supervisor Matt Fagan," (*id.* ¶ 39); and (3) that on October 2, 2019, she and her supervisor, Marie Barhold, spoke about Plaintiff's lack of work assignments, removal from HR, and filing of an "Out of Title Grievance complaining about the discrimination alleged herein-above," (*id.* ¶ 49). However, these conclusory allegations are devoid of any facts that would allow an inference that Plaintiff complained of *disability* discrimination and thus there is no basis to infer that Plaintiff's vague complaints constituted protected activity under the Rehabilitation Act. *See Natofsky*, 921 F.3d at 354 ("'Protected activity' is 'action taken to protest

or oppose statutorily prohibited discrimination.'" (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000))). The allegations of having complained "about the discrimination" or "her situation" are too conclusory to allow a plausible inference that Plaintiff engaged in protected activity by opposing an unlawful employment practice. *See Colas v. City of Univ. of New York*, No. 17-cv-4825, 2019 WL 2028701, at *8, 2019 U.S. Dist. LEXIS 80279, at *25 (E.D.N.Y. May 7, 2019) ("Plaintiff's allegation that 'shortly after complaining to Defendant of discriminatory treatment' Plaintiff was 'subject to further discrimination and harassment . . . is conclusory and does not sufficiently plead that she engaged in any form of protected activity.") (internal citation omitted); *Degidio v. Centro Props., LLC*, No. 11-cv-1353, 2013 WL 440131, at *6 & n.7, 2013 U.S. Dist. LEXIS 15083, at *23 & n.7 (E.D. Pa. Feb. 4, 2013) (finding that the plaintiff's allegation that he engaged in protected activity by "report[ing] the hostile work environment" to be a "conclusory assertion" and "legal conclusion"). Thus, Plaintiff has failed to plausibly allege that she engaged in protected activity. *See Qamar v. Sheridan Healthcare of Conn.*, No. 18-cv-1359, 2020 WL 4548136, at *11, 2020 U.S. Dist. LEXIS 140557, at *35 (D. Conn. Aug. 6, 2020) ("[C]omments which do not complain of discrimination—in other words, complaints about the workplace which do not implicate the protections of Title VII—are not protected.").[6]

### 2.    Adverse Action and Causal Connection

Plaintiff's retaliation claim is also subject to dismissal for failure to allege causal connection between any protected activity and any adverse action. Generally, "an adverse

---

[6] The Court notes that the Amended Complaint alleges that on November 19, 2019, Plaintiff filed a charge of disability discrimination and retaliation with the New York State Division of Human Rights, (Dkt. No. 7, ¶ 14), but Plaintiff does not allege any adverse action following the filing of the EEOC charge, nor does Plaintiff rely on her filing of the EEOC complaint as protected activity. (*See* Dkt. No. 18, at 23–25); *see Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 397 (S.D.N.Y. 2011) ("It is well established that the filing of an EEOC complaint is a protected activity." (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, (2001))).

employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination . . . : '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Id.* (quoting *Burlington Northern*, 548 U.S. at 64). To determine "whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).

"To adequately plead causation, 'the plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action.'" *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90). However, "'[B]ut-for' causation does not . . . require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (quoting *Vega*, 901 F.3d at 91). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action," *Vega*, 801 F.3d at 90, or "directly through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon*, 232 F.3d at 117).

Plaintiff alleges that she has suffered a number of adverse actions, including failure to promote, removal from the human resources department, assignment of clerical work, deprivation of work, rescission of computer permissions, and denial of training. (*See generally* Dkt. No. 7). Even assuming these allegations, which are mostly conclusory, are sufficient to

allege adverse action for purposes of a retaliation claim, Plaintiff fails to allege facts showing
retaliatory intent. The only allegation that arguably suggests retaliatory intent is the allegation
that human resources had instructed Supervisor Barhold "to 'be careful' with what work Plaintiff
was given" and that it "had to be work that was in 'Plaintiff's title'" because Plaintiff had filed a
grievance "complaining about the discrimination." (*Id.* ¶ 49). Because there are no allegations
regarding the contents of the grievance, there are no facts from which to draw any inference that
Barhold's comments about the grievance were retaliatory in nature. In other words, it would be
purely speculative to infer, as Plaintiff suggests, that Barhold's comments about being careful
with Plaintiff's work assignments reflect retaliatory animus toward Plaintiff for having opposed
unlawful *disability* discrimination. Moreover, as Plaintiff provided few dates in connection with
her purported protected activities and adverse actions, temporal proximity does not provide a
basis for inferring discriminatory intent. Indeed, October 2, 2019, the date of Plaintiff's
discussion with Barhold, is the only date Plaintiff identifies in connection with her alleged
protected activities, and it *postdates* the majority of the alleged adverse actions, including
Defendant's efforts to prevent her "from doing her job in human resources," which allegedly
occurred from November 2018 to November 2019, (*id.* ¶¶ 25–26 ("During the one-year period
prior to filing [the November 19, 2019, EEOC complaint] Plaintiff was . . . prevented . . . from
doing any work at all in her field of Human Resources.")), and Defendant's December 20, 2018,
denial of promotion to a HRS2 position, (*id.* ¶¶ 26, 36, 44). Even though there is a one-month
overlap between Plaintiff's October 2, 2019 discussion with Barhold about the grievance, and the
November 2018 to November 2019 time period during which Defendant allegedly prevented
Plaintiff from doing human resources work, because the Complaint alleges that the work
deprivation began at least a year before the alleged protected activity and was ongoing, there is

no basis for inferring a causal connection. *See, e.g.*, *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (holding, on summary judgment, that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise"). Thus, temporal proximity does not provide a basis for inferring retaliatory animus. *See Vega*, 801 F.3d at 90 (explaining that "protected activity *followed* closely in time by adverse employment action," may provide a basis for inferring causation") (emphasis added). Accordingly, because Plaintiff fails to sufficiently allege a retaliatory purpose either "directly through evidence of retaliatory animus directed against the plaintiff," *Littlejohn*, 795 F.3d at 319, or "indirectly by timing," *Vega*, 801 F.3d at 90, Plaintiff's Rehabilitation Act retaliation claim is dismissed.

### E.     Statute of Limitations

Defendant moves to dismiss claims which occurred more than three years prior to the July 19, 2021 filing of the complaint, as barred by the three-year statute of limitations applicable to Rehabilitation Act claims, (Dkt. No. 13-6, at 32–33). *See Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 687 (S.D.N.Y. 2011) ("Rehabilitation Act claims in New York are governed by New York's three-year statute of limitations governing personal injury actions.").

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). However, a statute of limitations defense raised in a motion to dismiss under Rule 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *Ortiz v. Cornetta*, 867 F.2d 146, 148–49 (2d Cir. 1989). Therefore, the Court may only grant a motion to dismiss based on statute of limitations grounds if there is no factual question as to whether the

alleged violations occurred within the statutory period. *See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 51 F. Supp. 2d 457, 468 (S.D.N.Y. 1999).

This action was filed on July 19, 2021; thus all discrete acts of discrimination or retaliation arising more than three years prior, i.e., before July 19, 2018, are time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (explaining that a plaintiff may "only file a charge to cover discrete acts that 'occurred' within the appropriate time period"). Here, Defendant argues that:

> all claims based on (i) the alleged September 2017 transfer out of the HR division to a non-HR division; (ii) rescinding Plaintiff's computer permissions; (iii) Plaintiff's lack of HR work assignments and HR training/classes; (iv) assignment of non-HR work to Plaintiff; (v) any claimed failure to return Plaintiff to her alleged "hold" position/duties; and/or (vi) the supposed failure to accommodate Plaintiff "without being removed from HR" in September 2017 are time barred.

(Dkt. No. 13-6, at 32). Plaintiff acknowledges that "events outside of the three year period prior to filing her Complaint are not part of the actionable conduct," but states that they were "provided for added context of Plaintiff's complaint." (Dkt. No. 18, at 25); *see* (Dkt. No. 7, ¶ 22 (alleging that a denial of promotion during which an interviewer allegedly "made repeated references to Plaintiff's disability and her status as a 55b employee," "occurred outside the statute of limitations")). Plaintiff is correct: "evidence of an earlier alleged retaliatory act may constitute relevant 'background evidence in support of [that] timely claim.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005) (quoting *Morgan*, 536 U.S. at 113). The Court, however, makes no determination at this point as to whether any time-barred events constitute relevant background evidence. Further, in view of the absence of dates in the Amended Complaint, the Court cannot say it is clear from the face of the Amended Complaint that any claims, other than the September 2017 transfer claim and the denial of promotion claim referenced in paragraph 22 of the Amended Complaint, which Plaintiff herself acknowledges are

untimely, are time-barred.[7] However, because the Amended Complaint must be dismissed in its entirety on other grounds, and because the Amended Complaint is largely devoid of dates, the Court declines to dismiss any claims on statute of limitations grounds at this early stage of the litigation.[8]

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 7) is **DISMISSED.**

**IT IS SO ORDERED.**

Dated:  <u>September 1, 2022</u>
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[7] The parties have not addressed the statute of limitations in connection with Plaintiff's hostile work environment claim, which is subject to a different analysis. *Hauff v. State Univ. of N.Y.*, 425 F. Supp. 3d 116, 134 (E.D.N.Y. 2019) (explaining that hostile work environment claims do not begin to accrue "until the last act in furtherance of the allegedly discriminatory practice"); *see also Morgan*, 536 U.S. at 122 ("A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). Accordingly, the Court has not considered the timeliness of any pre-July 19, 2018 allegations in connection with Plaintiff's hostile work environment claim.

[8] Plaintiff has not requested permission to amend and the Court does not therefore consider whether to permit amendment.